James X. Bormes
(*pro hac vice* admission pending)
Illinois State Bar No. 620268
Catherine P. Sons
(*pro hac vice* admission pending)
Illinois State Bar No. 6290805
LAW OFFICE OF JAMES X. BORMES, P.C.
Illinois State Bar No. 620268
8 South Michigan Avenue, Suite 2600
Chicago, Illinois  60603
(312) 201-0575
jxbormes@bormeslaw.com
cpsons@bormeslaw.com

LOCAL COUNSEL:
Michelle R. Matheson #019568
MATHESON & MATHESON, P.L.C.
15300 North 90th Street, Suite 550
Scottsdale, Arizona 85260
(480) 889-8951
mmatheson@mathesonlegal.com

**LEAD ATTORNEY IN CHARGE FOR PLAINTIFF AND CLASS MEMBERS**

Thomas M. Ryan
(*pro hac vice* admission pending)
Illinois State Bar No. 6273422
LAW OFFICE OF THOMAS M. RYAN, P.C.
35 East Wacker Drive, Suite 650
Chicago, Illinois  60601
(312) 726-3400
tom@tomryanlaw.com
Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| IVONNE CARBAJAL, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br>     v.<br><br>THE HOME DEPOT, INC., a Delaware Corporation and VALIDITY, INC. a Delaware Corporation.<br><br>                    Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Ivonne Carbajal, individually and on behalf of all others similarly situated as set forth herein, alleges as follows:

## NATURE OF THE ACTION

1.  Defendants deceptively embedded spy tracking pixels in marketing emails Defendants sent to Plaintiff and other Arizona residents who subscribed to The Home Depot's email list.

2.  Defendant The Home Depot, Inc. ("Home Depot") utilized the hidden embedded tracking system provided by Defendant Validity, Inc. ("Validity") to collect and track decptively, among other things, the time and place where Plaintiff and other Arizona residents opened the email, the average read time of an email, the amount of times an email was opened, whether an email was printed, whether an email was forwarded, and how long the recipient looked at the email, the device the recipient used to look at the email and even if and where you clicked within an email. Validity's hidden embedded email tracking pixels monitor Plaintiff and other Arizona residents behavior, stores this collected data to paint a uniquely identifiable detailed picture of Plaintiff and other Arizona residents' interests to create targeted advertising campaigns for Home Depot and presumably other affiliate retailers and service providers.

3.  This is a class action lawsuit brought on behalf of Arizona residents.

4.  Plaintiff's claims are brought under Arizona's Telephone, Utility and Communication Service Records Act (A.R.S. § 44-1376 *et seq*.).

5.  Arizona's Telephone, Utility and Communication Service Records Act prohibits a person from knowingly obtaining a "communication service record" of any Arizona resident i) without the authorization of the person to whom the record pertains or ii) by fraudulent, deceptive or false means. (A.R.S. § 44-1376.01(A)(1).

6.  Plaintiff and the Class members are recipients of Defendant Home Depot's emails that utilize and embed Validity's tracker to obtain, record and collect, *inter alia*, whether and when the email recipients open and read emails from Home Depot, where

they open it, how long they looked at it, whether they forwarded it, and how to best target recipients with future emails.

7. Defendants never received the Plaintiff's and Class Members' lawful and valid consent to collect, obtain and use this information.

8. By failing to receive lawful and validconsent from Plaintiff and the Class Members, Defendants did and are violating Arizona's Telephone, Utility and Communication Service Records Act.

## THE PARTIES

9. Plaintiff Ivonne Carbajal is a citizen of Arizona, residing in Maricopa County, Arizona.

10. Within the past two years, Plaintiff has frequently received and opened emails from Defendants to review promotional materials.

11. Plaintiff most recently opened one of Defendants' emails in March 2024.

12. Each time Plaintiff opened an email from Defendants, Defendants procured information identifying her and disclosing when she opened and read the email through the email tracking software embedded in the emails.

13. Defendants never received lawful and valid consent from Plaintiff to procure and obtain her private email records or the information Defendants' spy tracker obtained.

14. Defendant Home Depot, Inc. is a Delaware corporation with its principal place of business in Atlanta, Georgia.

15. Defendant Validity, Inc. is a Delaware corporation with its principal place of business in Boston, Massachusetts.

## JURISDICTION AND VENUE

16. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because this case is a class action where the aggregate claims of all members of the proposed class

are in excess of $5,000,000.00, exclusive of interest and costs, and there are over 100 members of the putative class, and Plaintiffs, as well as most members of the proposed class, are citizens of different states than Defendants.

17. The Court has personal jurisdiction over Defendants because Defendants conduct business in Arizona.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant resides in this District and is doing business and has a place of business in this District. Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events and a substantial part of the omissions giving rise to the claims in this case occurred in this District.

## Facts Supporting Plaintiff's Claims

### A. Email Spy Pixels

19. Despite Arizona law prohibiting the practice, companies embed trackers within emails without first obtaining Arizonans' consent. Indeed, "[a] 2018 Princeton study on email tracking tested over 12,000 emails from 900 senders offering mailing list subscriptions and found that 70% contained trackers."[1]

20. These trackers are known as "spy pixels."

21. A spy pixel is typically a 1x1 (one pixel high by one pixel long) image. "The spy pixel is so small it is basically impossible to see with the naked eye."[2]

---

[1] Mikael Berner, *The Business of Email Tracking: What To Know About Spy Pixels In Your Inbox*, FORBES (Jun 9, 2022), https://www.forbes.com/sites/forbestechcouncil/2022/06/09/the-business-of-email-tracking-what-to-know- about-spy-pixels-in-your-inbox/?sh=2084ee793fec.

[2] Becky Willeke, *Spy pixels are hiding in your emails; so what can you do about it?*, FOX 2 NOW (Mar. 15, 2021), https://fox2now.com/news/tech-talk/spy-pixels-are-hiding-in-your-emails-so-what-can-you-do-about-it/.

22. A spy pixel is deliberately made small and impossible to spot with the naked eye even if a person knows where to look.

23. An email spy pixel is a tiny pixel graphic used to measure various metrics while gathering information about email recipients.

24. The minuscule size of a spy pixel makes it almost invisible and enables it to blend in with the background of an email. This is intentional, as tracking pixels (i.e., spy pixels) are designed to go unseen.

25. The objective of a spy pixel is to collect information without the knowledge of the recipient of the email.

26. The spying effect is that, without the email recipient choosing to do so, the result of opening the email is to report to the sender of the email: if and when an email is read, when (and how many times) it is read, the IP address and other unique identity details of the computer or smartphone used to read the email, and from the latter, the geographical location of the recipient.

27. To activate a spy pixel, recipients need only to open the email.

**B.   Defendants' Spy Pixel Tracking**

28. Defendant Validity acquired the customer engagement and email tracking company Return Path in 2019.[3]

29. Defendant Validity, using "the cutting-edge technology and functionality of the Return Path Platform", created Everest.

30. Defendants use Everest.

31. Everest is an email tracking system offered by Validity.[4]

---

[3] https://www.validity.com/blog/validity-return-path-announcement/

[4] https://www.validity.com/everest/

32. Validity markets Everest by stating, among other things, that "Validity Everest is the email deliverability platform that provides crucial insights and guidance so you can reach more people, increase engagement, and protect your email performance."[5]

33. With Everest, Defendants can "[u]nderstand the time of day your emails are opened, what devices they are opened on, and how long people are looking at them."[6]

34. Everest also gives Defendants the ability to "[f]ilter [their] engagement data by mailbox provider, platform, location, and more to understand high- and low-performing segments."[7]

35. According to Validity, Everest allows companies to "[g]et a complete view of [their] email performance to drive strategic decisions."[8] This is done by procuring "engagement data" and combining it into "a single interface" to "drill down into performance by mailbox provider."[9]

36. Everest users, including Home Depot, create an "Everest tracking pixel" to capture "engagement data."

37. "The Everest tracking pixel has the ability to record recipients or values associated with those recipients, individual email campaigns, and additional custom properties via what are commonly referred to as merge tags or personalization tokens."[5][7]

38. With a personalization token, a company or person can "collect engagement data" on individual email recipients.[10]

---

[5] https://www.validity.com/everest/#more-messages

[6] https://www.validity.com/everest/engagement-analytics/

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

39. The "engagement data" Everest collects includes average read time of an email, the amount of times an email was opened, unique opens per email address, whether an email was printed, whether an email was forwarded, and how long the recipient looked at the email.[11]

40. Defendants use Everest to procure all "engagement data" record information with its tracking pixel.

41. Defendants embed a second tracking pixel that contains unique spy pixel URLs—personalization tokens—for each email it sends.

42. This second tracking pixel enables Defendants to track "engagement data" for every email recipient on an individual level.

43. This second tracking pixel can be seen in a snippet of the HTML code in one of Defendant Home Depot's emails.

```
<img src=3D"https://trk.mg.homedepot.com/o/4/eyJhaSI6MjY2NzI0NDQsImUiOiJrYX=
NpZmtob3dhamFAZ21haWwuY29tIiwicmkiOiI1MjIyMzgyNyIsInJxIjoiMDItYjIyMjkyLTVjN=
zE1NmYwYzZhNjQxODQ4ZDYyZDNkMmYxZDhlNGZhIiwicGgiOm51bGx9/0z9ycojNxIJ9laHHXR7=
Hpg" width=3D"1" height=3D"1">
<img src=3D"https://pixel.app.returnpath.net/pixel.gif?r=█████████████████=
█████████████████" width=3D"1" height=3D"1" style=3D"display:none">
<img src=3D"http://homedepot.demdex.net/event?d_dpid=3D3038&amp;d_dpuuid=3D=
█████████████_sid=█████████" width=3D"1" height=3D"1" style=3D"display:non=
e">
```

44. Defendants embedded a spy pixel (one pixel high by one pixel long) in marketing emails Defendant Home Depot sent to Plaintiff and Defendants utilized the tracking system provided by Everest to track, among other things, the time and place of where the emails were opened.

45. Plaintiff was unaware that tracking pixels were embedded in the emails sent to her by Defendants.

---

[11] https://knowledge.validity.com/hc/en-us/articles/4403870401563-Everest-Engagement-Playbook-Beginner

46. Defendants never received lawful and valid consent from Plaintiff to use these spy pixels.

47. Defendants never received lawful and valid consent from Class Members to use these spy pixels.

**Arizona's Telephone, Utility and Comunication Service Records Act**
**A.R.S. § 44-1376**

48. A.R.S. § 44-1376 *et seq.* prohibits procurement of any "communication service record" (including email records) of "any resident of this state without the authorization of the customer to whom the record pertains, or by fraudulent, deceptive, or false means." A.R.S. § 44-1376.01.

49. A.R.S. § 44-1376 (1) defines "communication service record" as follows: "'Communication service record' includes subscriber information, including name, billing or installation address, length of service, payment method, telephone number, electronic account identification and associated screen names, toll bills or access logs, records of the path of an electronic communication between the point of origin and the point of delivery and the nature of the communication service provided, such as caller identification, automatic number identification, voice mail, electronic mail, paging or other service features. Communication service records do not include the content of any stored oral, wire or electronic communication or a telephone record."

50. A.R.S. 44-1376.04(A)(2) allows Arizona residents to pursue civil causes of action and civil remedies. Ariz. Rev. Stat. Ann. § 44-1376.04(A)(2).

51. A.R.S. 44-1376.04(A)(2) states that "[i]n a civil action, a customer whose communication service records were procured, sold or received in violation of this article may recover from the person that committed the violation the following relief…2. Damages equal to the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation but in no case shall a person entitled to recover received less than one thousand dollars."

**Class Action Allegations**

52. Plaintiff seeks to represent a class (the "Class" or "Class Members") defined as: All persons in the State of Arizona who have opened a marketing email containing a tracking pixel from Defendants.

53. Excluded from the Class are Defendants, its subsidiaries, affiliates, officers, directors, assigns and successors, and any entity in which it has a controlling interest, and the Judge to whom this case is assigned and any member of his or her immediate family.

54. Class Members are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class number in the tens of thousands and possibly more. The precise number of Class Members and their identities are unknown to Plaintiff at this time but will be determined through discovery.

55. Class Members may be notified of the pendency of this action by email, mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

56. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

> a) whether Defendants "[k]nowingly procure[d], attempt[ed] to procure, solicit[ed] or conspire[d] with another to procure a … communication service record of any resident of this state without the authorization of the customer to whom the record pertains or by fraudulent, deceptive or false means";
>
> b) whether Plaintiff's and the Class's "communication service records" were procured, sold or received in violation of A.R.S. § 44-1376 *et seq*.
>
> c) whether Defendants' conduct violates A.R.S. § 44-1376 *et seq*. or any other applicable laws; and

d) whether, as a result of Defendants' misconduct as alleged herein, Plaintiff and Class Members are entitled to restitution, injunctive, and/or monetary relief and, if so, the amount and nature of such relief.

57. Plaintiff's claims are typical of the claims of Class Members because Plaintiff, like all Class Members, had her communication service records procured, sold, or received by Defendants.

58. Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class she seeks to represent, she has retained counsel competent and experienced in prosecuting class actions, and she intends to prosecute this action vigorously. The interests of Class Members will be fairly and adequately protected by Plaintiff and their counsel.

59. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and Class Members. Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.

60. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.

61. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.

62. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

63. Plaintiff brings this claim individually and on behalf of the proposed Class against Defendants.

64. Defendants deceptively embed spy pixels in its marketing emails sent to Plaintiff and Class Members.

65. Defendants use the spy pixels to extract "communication service records" related to Plaintiff, the Class and the delivery of the email the spy pixel is embedded in. This includes, but is not limited to, time logs of email access, associated email addresses, email client type, email path data, IP addresses, and device information.

## Count I

## Violation of A.R.S. § 44-1376.01

66. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint.

67. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendants.

68. Defendants "procure" and obtain Plaintiff's and Class Members' "communication service records" because they "obtain by any means, including electronically" Plaintiff's and Class member's "communication service records" as defined in A.R.S. § 44-1376.

69. In contravention of A.R.S. § 44-1376.01, Defendants knowingly deceptively procure and obtain "subscriber information, including name, billing or installation address, length of service, payment method, telephone number, electronic account identification and associated screen names, toll bills or access logs, records of the path of an electronic communication between the point of origin and the point of delivery and the nature of the communication service provided, such as … electronic mail …," which constitute "communication service records" under A.R.S. § 44-1376, from Plaintiff and Class Members.

70. Defendants acted deceptively because they never informed Plaintiff and Class Members that Defendants would be procuring sensitive information including, but not limited to, time logs of email access, associated email addresses, email client type, location information, email path data, IP addresses, and device information.

71. Plaintiff and Class Members never gave lawful and valid consent to Defendants to procure the communication service records.

72. Each time Defendants sent an email containing a spy pixel to Plaintiff and Class Members, Defendants procured a communication service record, thus committing a separate violation of A.R.S. § 44-1376.01.

73. Defendants invaded Plaintiff's and Class Members' right to privacy by spying on them when they opened and read an email. That conduct also intruded upon their seclusion.

74. Accordingly, Plaintiff, individually and on behalf of the proposed Class, prays for the relief set forth by the statute, including actual damages, profits made by Defendants as a result of the violation, $1,000 for each violation, reasonable attorneys' fees and other litigation costs reasonably incurred, and such other equitable relief as the court determines to be appropriate.

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, seeks judgement against Defendants, as follows:

    a. For an order certifying the Class under Fed. R. Civ. P 23 and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class members;

    b. For an order declaring that Defendants' conduct, as set out above, violates A.R.S. § 44- 1376.01;

    c. For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

    d. For actual damages or damages of $1,000.00 for each of Defendants' violations, whichever is more, pursuant to A.R.S. § 44-1376.04;

  e. For damages equal to the sum of any profits Defendants made for each of Defendants' violations, pursuant to A.R.S. § 44-1376.04;

  f. For injunctive and other equitable relief as is necessary to protect the interests of the Class, including, *inter alia*, an order requiring Defendants to comply with A.R.S. § 44-1376 *et seq*.

  g. For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit;

  h. For pre- and post-judgment interest on all amounts awarded, to the extent allowable; and

  i. For such other and further relief as the Court may deem proper.

## **Jury Demand**

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated: March 29, 2024    Respectfully submitted,

         Ivonne V. Carbajal, individually and on behalf of a collective of persons similarly situated.

         <u>/s/ James X. Bormes</u>

| | |
|---|---|
| James X. Bormes | LOCAL COUNSEL: |
| (*pro hac vice* admission pending) | Michelle R. Matheson #019568 |
| Illinois State Bar No. 620268 | MATHESON & MATHESON, P.L.C. |
| Catherine P. Sons | 15300 North 90th Street, Suite 550 |
| (*pro hac vice* admission pending) | Scottsdale, Arizona 85260 |
| Illinois State Bar No. 6202568   (480) 889-8951 | |
| LAW OFFICE OF JAMES X. BORMES, P.C. | mmatheson@mathesonlegal.com |
| Illinois State Bar No. 620268 | |
| 8 South Michigan Avenue, Suite 2600 | |
| Chicago, Illinois  60603 | |
| (312) 201-0575 | |
| jxbormes@bormeslaw.com | |
| cpsons@bormeslaw.com | |

**LEAD ATTORNEY IN CHARGE FOR**

**PLAINTIFF AND CLASS MEMBERS**

Thomas M. Ryan
(*pro hac vice* admission pending)
Illinois State Bar No. 6273422
LAW OFFICE OF THOMAS M. RYAN, P.C.
35 East Wacker Drive, Suite 650
Chicago, Illinois  60601
(312) 726-3400
tom@tomryanlaw.com
Attorney for Plaintiff