MATTHEW A. MACDONALD
(*pro hac vice* )
WILSON SONSINI GOODRICH &
ROSATI
PROFESSIONAL CORPORATION
953 East 3rd Street, Suite 100
Los Angeles, CA 90013
Telephone: (323) 210-2900
Facsimile: (323) 210-7329
matthew.macdonald@wsgr.com

JOSHUA J. CRADDOCK
(*pro hac vice*)
WILSON SONSINI GOODRICH &
ROSATI
PROFESSIONAL CORPORATION
1881 Ninth Street
Boulder, CO 80302
Telephone: (303) 256-5900
Facsimile: (866) 974-7329
jcraddock@wsgr.com

*Attorneys for Defendant*
Home Depot U.S.A., Inc.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ivonne Carbajal, individually and behalf of all others similarly situated, | CASE NO.  2:24-cv-00730-DGC |
| Plaintiff, | **DEFENDANT HOME DEPOT U.S.A., INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| v. | |
| Home Depot U.S.A., Inc.; and Validity Inc., | |
| Defendants. | |

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................1

BACKGROUND ..............................................................................................2

ARGUMENT ..................................................................................................4

I.      Standard of Review ...............................................................................4

II.     Plaintiff's FAC Fails to Plead A TUCSRA Violation ...............................5

        A.      Home Depot Has Not Procured "Communication Service
                Records" .........................................................................................6

                1.      Text and Context Prove That Email Engagement
                        Data Are Not "Communication Service Records" ................7

                        a.      TUCSRA Borrowed from an Earlier Statute
                                Addressing Communication Service Providers ...........7

                        b.      Plaintiff Does Not Allege That the Records Were
                                Retained by a Communication Service Provider ..... 10

                        c.      Ambiguity Must Be Resolved in Home Depot's
                                Favor .................................................................... 11

                2.      Legislative History Shows Arizona Was Concerned
                        With "Pretexting," Not Email Marketing ......................... 13

                3.      Plaintiff's Interpretation Produces Absurd Results .......... 14

        B.      Plaintiff Has Not Pleaded Facts Showing That Home Depot
                Knowingly Acted Without Authorization ..................................... 15

        C.      Plaintiff Has Not Pleaded Facts Showing That She is Home
                Depot's "Customer" ...................................................................... 17

CONCLUSION ............................................................................................ 17

1

## <u>TABLE OF AUTHORITIES</u>

2
<u>Page</u>

3

### CASES

4
*ACA Connects v. Bonta,*
    24 F.4th 1233 (9th Cir. 2022) ................................................................ 11

5
*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...............................................................................4

6

7
*Branch v. State,*
    136 P. 628 (Ariz. 1913) ......................................................................... 11

8
*Garner v. Amazon.com,*
    603 F. Supp. 3d 985 (W.D. Wash. 2022) ............................................... 10

9

10
*Gonzalez v. Planned Parenthood of Los Angeles,*
    759 F.3d 1112 (9th Cir. 2014) ................................................................ 16

11
*hiQ Labs, Inc. v. LinkedIn Corp.,*
    31 F.4th 1180 (9th Cir. 2022) ................................................................ 12

12

13
*Ileto v. Glock Inc.,*
    349 F.3d 1191 (9th Cir. 2003) ...............................................................4

14
*In re Drummond,*
    543 P.3d 1022 (Ariz. 2024) .................................................................... 10

15

16
*Leocal v. Ashcroft,*
    543 U.S. 1 (2004) .................................................................................. 12

17
*Prudential v. Estate of Rojo-Pacheco,*
    962 P.2d 213 (Ariz. Ct. App. 1997) ........................................................8

18

19
*Robson Ranch Mountains, LLC v. Pinal County,*
    51 P.3d 342 (Ariz. Ct. App. 2002) ..........................................................5

20
*RSP Architects, Ltd. v. Five Star Dev. Resort Cmtys., LLC,*
    306 P.3d 93 (Ariz. Ct. App. 2013) ..........................................................8

21

22
*State v. Allen,*
    513 P.3d 282 (Ariz. 2022) ......................................................... 4, 5, 14

23
*State v. Barnett,*
    101 P.3d 646 (Ariz. Ct. App. 2004) .......................................... 2, 5, 12, 14

24

25
*State v. McDermott,*
    208 Ariz. 332 (Ariz. Ct. App. 2004) ...................................................... 12

26
*State v. Medrano-Barraza,*
    949 P.2d 561 (Ariz. Ct. App. 1997) ....................................................... 15

27

28

*State v. Zuck,*
    No. 2 CA-CR 2019-0130, 2021 WL 2103598
    (Ariz. Ct. App. May 25, 2021) ..................................................................6

*Suzlon Energy Ltd. v. Microsoft Corp.,*
    671 F.3d 726 (9th Cir. 2011) ................................................................. 11

*T.P. Racing, L.L.L.P. v. Ariz. Dep't of Gaming,*
    No. 1 CA-CV 22-0224, 2022 WL 17684565
    (Ariz. Ct. App. Dec. 15, 2022) ................................................................9

*United States v. Ritchie,*
    342 F.3d 903 (9th Cir. 2003) ..................................................................3

*United States v. Thompson/Ctr. Arms Co.,*
    504 U.S. 505 (1992) ............................................................................ 12

*Vo v. Superior Court,*
    836 P.2d 408 (Ariz. Ct. App. 1992) .................................................. 5, 12

*Yates v. United States,*
    574 U.S. 528 (2015) ............................................................................ 10

## STATUTES

A.R.S. § 13-105 ........................................................................................ 16

A.R.S. § 13-202 ........................................................................................ 16

A.R.S. § 13-3001 ................................................................................. 7, 10

A.R.S. § 13-3018 ........................................................................................7

A.R.S. § 44-1376 ................................................................ 1, 6, 8, 9, 10, 14

A.R.S. § 44-1376.01 ............................................................ 5, 9, 15, 16, 17

A.R.S. § 44-1376.02 ..................................................................................8

A.R.S. § 44-1376.04 ................................................................... 5, 8, 17

A.R.S. § 44-1376.05 ................................................................................ 11

18 U.S.C. § 1039 ............................................................................... 13, 14

47 U.S.C. § 222 ........................................................................................ 14

## RULES

Fed. R. Civ. P. 8(a) .................................................................................. 17

Fed. R. Civ. P. 12(b)(6) ................................................................ 1, 2, 3, 4

# MISCELLANEOUS

Antonin Scalia & Bryan A. Garner, *Reading Law* (2012) ............................. 10

Ariz. Legis. Serv. Ch. 260 § 1 (H.B. 2785) ...................................... 7, 8

Ariz. House Bill Summary,
    2006 Reg. Sess. H.B. 2785 (Feb. 16, 2006) ............................. 13

Ariz. Sen. Fact Sheet for H.B. 2726,
    2007 Reg. Sess. H.B. 2726 (Apr. 20, 2007) ............................. 14

Ariz. Sen. Fact Sheet for H.B. 2785,
    2006 Reg. Sess. H.B. 2785 (Apr. 25, 2006) ............................. 13

Becky Willeke, *Spy pixels are hiding in your emails; so what can
    you do about it?* Now (Mar. 15, 2021) ........................................3

*In re: Implementation of the Telecommunications Act of 1996:
    Telecommunications Carriers Use of Customer Proprietary
    Network Info. & Other Customer Info. IP-Enabled Servs.,*
    22 F.C.C. Rcd. 6927 (Apr. 2, 2007)........................................ 14

*Minutes, Hearing on H.B. 2785 before the Ariz. Com. Comm.,* 47th
    Leg., 2d Sess. (Feb. 15, 2006) ............................................. 13

1    Defendant Home Depot U.S.A., Inc. ("Home Depot") moves to dismiss
2    Plaintiff Ivonne Carbajal's First Amended Class Action Complaint ("FAC")
3    (ECF No. 4) under Federal Rule of Civil Procedure 12(b)(6).    Because
4    Plaintiff's FAC lacks factual allegations necessary to plead essential elements
5    of her claim, it should be dismissed with prejudice.

6    ## MEMORANDUM OF POINTS AND AUTHORITIES

7    ## INTRODUCTION

8    This case is the latest in a series of attempts by the plaintiffs' bar (and
9    Plaintiff herself) to transform an unrelated statute into a prohibition against
10    standard electronic advertising practices.   This iteration concerns "pixel tags,"
11    or as Plaintiff creatively dubs them, "spy pixels."   Retailers use these features
12    in marketing emails to determine whether users received, read, or otherwise
13    engaged with the content.    As Plaintiff herself alleges, pixel tags are
14    ubiquitous in the marketing industry because tags help measure and improve
15    the effectiveness of advertisers' promotional campaigns.   *See* FAC ¶ 19 & n.1.

16    Plaintiff's attempt to turn the use of such pixels into a violation of
17    Arizona's Telephone, Utility and Communication Service Records Act
18    ("TUCSRA") fails as a matter of law.   TUCSRA has nothing to do with email
19    engagement data, Internet cookies, or any of the many ways that targeted
20    advertising is delivered or improved.   Rather, the law is directed at a practice
21    called "pretexting."    It prohibits fraudulently obtaining the records that
22    communication service providers—such as Internet service providers and
23    cable companies—collect about their customers as an incident to providing
24    their services.    *See* A.R.S. § 44-1376 *et seq*.   But Home Depot is not a
25    communications service provider, and the information that pixel tags
26    allegedly generate are not "communication service records."

27    In the seventeen years since Arizona passed TUCSRA, no court has
28    interpreted the statute to apply to promotional email lists or advertising

performance trackers.  Plaintiff's unprecedented interpretation would vastly expand TUCSRA's reach, generate absurd and unanticipated results, and threaten both civil and criminal liability for nearly every retailer that emails Arizona residents.  This Court should decline Plaintiff's invitation to become the first court to reach such a radical conclusion.  And when interpreting a penal statute such as this one, any doubts must be resolved in the defendant's favor.  *See State v. Barnett*, 101 P.3d 646, 649 (Ariz. Ct. App. 2004).

In addition, Plaintiff has not plausibly pleaded either that she is Home Depot's "customer" or that Home Depot "knowingly" acted "without [her] authorization."  Because Plaintiff cannot plead essential elements of her claim, the FAC must be dismissed with prejudice under Federal Rule of Civil Procedure 12(b)(6).

## BACKGROUND

This case is about marketing emails that Plaintiff voluntarily chose to receive.  Plaintiff alleges that she "subscribed to Home Depot's email list" and has "frequently received and opened emails from [Home Depot] to review promotional materials" in "the past two years."  FAC ¶¶ 1, 10.

Plaintiff now complains that these "marketing emails" contained "tracking pixels." *Id.* ¶ 1. According to Plaintiff, these pixel tags act as a read-receipt technology.  They "report to the sender of the email: if and when an email is read, . . . the IP address and other unique identity details of the computer or smartphone used to read the email, and from the latter, the geographical location of the recipient." *Id.* ¶ 26.  Plaintiff alleges that pixel tags also generate and report certain data, such as "the average read time of an email, the amount of times an email was opened, whether an email was printed, whether an email was forwarded, and how long the recipient looked at the email." *Id.* ¶ 2; *see also id.* ¶ 39.  "To activate" the pixel tag and generate that data, "recipients need only to open the email." *Id.* ¶ 27.

1  According to documents incorporated into Plaintiff's FAC, pixel tags

2  "are hyperlinks to remote image files that if downloaded" indicate to the

3  sender that the recipient opened the email simply because the image file was

4  downloaded.  Becky Willeke, *Spy pixels are hiding in your emails; so what can*

5  *you do about it?*, FOX2 Now (Mar. 15, 2021), https://fox2now.com/news/tech-

6  talk/spy-pixels-are-hiding-in-your-emails-so-what-can-you-do-about-it/  (cited

7  at FAC ¶ 21 n.2).[1]  Thus, the function "only works when people are reading

8  HTML emails and if the remote image is downloaded."  *Id.*

9  Although Plaintiff calls them "spy pixels," FAC ¶ 1, she does not allege

10  that the pixel tags allowed Home Depot to view her passwords, track her

11  keystrokes, monitor her browsing across the Internet, or read the emails she

12  sends to or receives from others.  Nor does she allege that Home Depot hacked

13  her telephone company or fraudulently obtained her records from her Internet

14  service provider.  The *only* information that the pixel tags are alleged to create

15  is read-receipt data about the way users (who have asked to receive marketing

16  emails) interact with Home Depot's promotional emails.

17  Plaintiff acknowledges that this data is used for industry-standard

18  marketing purposes.  It helps marketers gain "crucial insights" into whether

19  subscribers receive their emails, what offers subscribers are most interested

20  in, and how to optimize the timing of email delivery—all ultimately in service

21  of improving the user experience.  *See id.* ¶¶ 32-35.  No wonder, then, that

22

23

24

---

25  [1] A court may "consider certain materials—documents attached to the

26  complaint, documents incorporated by reference in the complaint, or matters of

27  judicial notice—without converting the motion to dismiss into a motion for

28  summary judgment."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  And courts "assume that [an incorporated document's] contents are true for purposes of a motion to dismiss under Rule 12(b)(6)."  *Id.*

1  according to Plaintiff at least 70% of email lists are alleged to employ trackers
2  like pixel tags to generate engagement data.  *See id.* ¶ 19 & n.1.

3      Plaintiff asserts that even though she "subscribed to Home Depot's
4  email list," she never gave Home Depot her "consent to collect, obtain[,] and
5  use this information."  *Id.* ¶¶ 1, 7.  Plaintiff filed this putative class action of
6  Arizona residents asserting a single claim under TUCSRA's civil remedy
7  provision.  *See id.* ¶¶ 66-74.  Since filing this case, she has also sued The Gap
8  and Lowe's alleging identical TUCSRA violations.  *See Carbajal v. Gap Inc.*,
9  No. 2:24-cv-01056-ROS (D. Ariz. filed May 7, 2024); *Dominguez v. Lowe's Cos.*
10 *Inc.*, No. 2:24-cv-01030-DLR (D. Ariz. July 11, 2024), ECF No. 18 (substituting
11 Carbajal as new named plaintiff).

## ARGUMENT

12

## I.    Standard of Review
13

14     To survive a motion to dismiss under Federal Rule of Civil Procedure
15 12(b)(6), a complaint must "state a claim to relief that is plausible on its face"
16 by "plead[ing] factual content that allows the court to draw the reasonable
17 inference that the defendant is liable for the misconduct alleged."  *Ashcroft v.*
18 *Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  "A pleading that offers
19 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of
20 action will not do.'"  *Id.* (citation omitted).  Pleadings that only permit a court
21 to infer "the mere possibility of misconduct" are subject to dismissal.  *Id.* at
22 679.  And a court will "not accept any unreasonable inferences or assume the
23 truth of legal conclusions cast in the form of factual allegations."  *Ileto v. Glock*
24 *Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003).

25     The Arizona Supreme Court interprets "statutes to give effect to the
26 legislature's intent."  *State v. Allen*, 513 P.3d 282, 313 (Ariz. 2022) (citation
27 omitted).  When "statutory language is clear and unambiguous, and thus
28 subject to only one reasonable meaning, we apply the language without using

1    other means of statutory construction." *Id.* (cleaned up).   But when "the

2    language is ambiguous, we determine meaning by considering other factors,

3    such as its subject matter, and historical background; its effects and

4    consequences; and its spirit and purpose." *Id.* (cleaned up).   In so doing,

5    Arizona courts "seek to harmonize related statutory provisions and aim to

6    achieve consistency among them in the context of the overall statutory

7    scheme." *Robson Ranch Mountains, LLC v. Pinal County*, 51 P.3d 342, 347

8    (Ariz. Ct. App. 2002) (cleaned up).

9         In addition, when (as here) a penal statute is at issue, courts must

10   "resolve all doubts in the defendant's favor" whenever there is ambiguity.

11   *Barnett*, 101 P.3d at 649.  This "essential" due-process protection ensures that

12   defendants have "fair warning of the nature of the conduct proscribed." *Vo v.*

13   *Superior Court*, 836 P.2d 408, 413 (Ariz. Ct. App. 1992).[2]

14   **II.   Plaintiff's FAC Fails to Plead A TUCSRA Violation**

15        TUCSRA makes it a criminal offense to "Knowingly [i] procure, attempt

16   to procure, solicit or conspire with another to procure [ii] a public utility

17   record, a telephone record or communication service record [iii] of any resident

18   of this state [iv] without the authorization of the customer to whom the record

19   pertains or by fraudulent, deceptive or false means."   A.R.S. § 44-

20   1376.01(A)(1).  For such conduct, TUCSRA also confers a civil cause of action

21   on "a customer whose communication service records . . . were procured, sold

22   or received in violation of this article." *Id.* § 44-1376.04(A).

23        Despite its enactment nearly two decades ago, we know of no authority

24   interpreting TUCSRA's elements or cause of action, much less any precedent

25   supporting Plaintiff's expansive interpretation.   The few publicly available

26

27        —————————————————

28        [2] Home Depot assumes that Arizona law applies for purposes of this motion,
     without prejudice to any future choice-of-law arguments it may raise.

1   Arizona cases interpreting TUCSRA all arose in the criminal context and

2   involve law-enforcement subpoenas to telephone or communication service

3   providers. *See, e.g.*, *State v. Zuck*, No. 2 CA-CR 2019-0130, 2021 WL 2103598,

4   at \*4 (Ariz. Ct. App. May 25, 2021) (unpublished) (subpoena to Cox

5   Communications for Internet subscriber information).

6        Plaintiff fails to state a claim for many reasons, including because she

7   fails to plead facts showing that (A) the records at issue are "communication

8   service records"; (B) Plaintiff is Home Depot's "customer"; and (C) Home Depot

9   "knowingly" acted "without [Plaintiff's] authorization." Each of these

10   deficiencies is independently fatal to her claim.

### A.   Home Depot Has Not Procured "Communication Service Records"

13        The fundamental problem with Plaintiff's claim is that the data that

14   Home Depot's pixel tags allegedly create are not protected "communication

15   service records." TUCSRA defines "communication service records" to *include*

16   "subscriber information" and then provides a long, non-exclusive list of types

17   of subscriber information, such as the subscriber's

> name, billing or installation address, length of service, payment method, telephone number, electronic account identification and associated screen names, toll bills or access logs, records of the path of an electronic communication between the point of origin and the point of delivery and the nature of the communication service provided, such as caller identification, automatic number identification, voice mail, electronic mail, paging or other service features. Communication service records do not include the content of any stored oral, wire or electronic communication or a telephone record.

24   A.R.S. § 44-1376(1).

25        But TUCSRA does not explain the shared characteristic that unites

26   these types of subscriber information as "*communication service* records." It

27   does not, for example, say when a "name" or "telephone number" is a

28   "communications service record" and when it is not. The overall statutory

scheme, statutory text, and canons of construction, however, show that this definition only applies to subscriber information collected and retained by *communication service providers*.  TUCSRA does not cover records created or retained by entities that merely disseminate communications, such as newspapers, distributors of electronic newsletters, or retailers that send marketing emails.  Because Home Depot's alleged use of pixel tags does not procure "communication service records," TUCSRA does not apply.

> **1.      Text and Context Prove That Email Engagement Data Are Not "Communication Service Records"**

Arizona did not legislate on a blank slate when it enacted TUCSRA in 2007.  Reading the statutory scheme consistently and as a whole, email engagement data allegedly generated through pixel tags cannot be "communication service records" under TUCSRA.

> **a.      TUCSRA Borrowed from an Earlier Statute Addressing Communication Service Providers**

In 2000, Arizona amended its Eavesdropping and Communications Act to allow prosecutors to subpoena "communication service records" from "all communication service providers that do business in this state or that furnish communication services to persons within this state." A.R.S. § 13-3018(A), (B). The Eavesdropping Act defined "communication service provider" to mean "any person who is engaged in providing a service that allows its users to send or receive oral, wire or electronic communications or computer services." *Id.* § 13-3001(3).  And it defined "communication service records" with exactly the same language that the legislature would later use in TUCSRA. *See id.* § 13-3018(G).

Arizona next adopted the Telephone Records Act of 2006. *See* 2006 Ariz. Legis. Serv. Ch. 260 § 1 (H.B. 2785).  The 2006 Act created a new criminal offense prohibiting the unauthorized or fraudulent procurement, sale, or

receipt of telephone records. *See id.* And it defined "telephone record" to mean "information that is retained by a telephone company" about a customer, such as "the time the call started and ended, the duration of the call, the time of day the call was made, any charges applied and any information that indicates the location from which or to which the call was made." *Id.* (codified as amended at A.R.S. § 44-1376(7)). The 2006 Act provided carve-outs for law enforcement and government entities consistent with the Eavesdropping Act, *see id.* (codified as amended at A.R.S. § 44-1376.02), as well as a civil cause of action for customers whose telephone records were unlawfully procured, *see id.* (codified as amended at A.R.S. § 44-1376.04).

Finally, the legislature passed TUCSRA in early 2007, which expanded the 2006 Act to prohibit the unauthorized or fraudulent disclosure of records collected by public utilities or communication service providers, in addition to telephone companies. TUCSRA defined "public utility record" to "include[] customer information, including name, billing or installation address, length of service, payment method or any other personal identifying information." A.R.S. § 44-1376(4). And it borrowed word-for-word from the Eavesdropping Act's definition of "communication service records." *See* A.R.S. § 44-1376(1).

Like the Eavesdropping Act before it, TUCSRA defined "communication service records" to cover records that communication service providers collect about their subscribers as an incident to providing services. When the Arizona legislature borrowed that definition from the Eavesdropping Act, it signaled that TUCSRA's use of the term should be interpreted consistently. After all, Arizona courts "presume that when the legislature enacts a statute, it is aware of existing statutes," and that new laws should be "read in the context of related provisions and of the overall statutory scheme" to "achieve consistency among the related statutes." *Prudential v. Estate of Rojo-Pacheco*, 962 P.2d 213, 222-23 (Ariz. Ct. App. 1997) (citation omitted); *see also RSP Architects,*

*Ltd. v. Five Star Dev. Resort Cmtys., LLC*, 306 P.3d 93, 96 (Ariz. Ct. App. 2013) (holding that when the legislature recycled text from an earlier statute, "it knew and intended that the latter statute" would be subject to the same limitations). Arizona courts also "presume that words bear the same meaning throughout a text," and this "presumption of consistent usage applies across different code sections." *T.P. Racing, L.L.L.P. v. Ariz. Dep't of Gaming*, No. 1 CA-CV 22-0224, 2022 WL 17684565, at *3 (Ariz. Ct. App. Dec. 15, 2022) (quotations omitted).

If the legislature had meant to address *any* record about a communication collected by *any* person, it could have done so by using the phrase "communication records" or even "records." But TUCSRA deliberately addressed *communication service* records—*i.e.*, records collected by communication service providers. That is why the definition of "communication service record" refers to a "subscriber" to a "communication service," such as a caller identification or voice mail service. A.R.S. § 44-1376(1). In the same way, TUCSRA refers to the "customer" of a public utility in its definition of "public utility record," *see id.* § 44-1376(4), and "the relationship between the telephone company and the customer" in its definition of "telephone record," *id.* § 44-1376(7). In each case, TUCSRA protects from disclosure the records that telephone companies, public utilities, or communication service providers collect about their customers.

Even the phrasing of the offense underscores this conclusion. TUCSRA prohibits the unauthorized or fraudulent procurement of "a public utility record, a telephone record or communication service record." *Id.* § 44-1376.01(A)(1). When statutory terms are "conjoined in such a way as to indicate that they have some quality in common," the doctrine of *nocitur a sociis* teaches that they should be given related meanings to avoid "ascribing to one [term] a meaning so broad that it is inconsistent with its accompanying

1  words." *In re Drummond*, 543 P.3d 1022, 1028 (Ariz. 2024) (first quoting

2  Antonin Scalia & Bryan A. Garner, *Reading Law* 196 (2012); then quoting

3  *Yates v. United States*, 574 U.S. 528, 543 (2015)).  Applying that doctrine here,

4  a communication service record under TUCSRA must be a record collected by

5  a utility, akin to a public utility record or telephone record.

6               **b.    Plaintiff Does Not Allege That the Records Were**

7                       **Retained by a Communication Service Provider**

8       As an initial matter, Plaintiff does not (and cannot) allege that Home

9  Depot is a "communication service provider" under Arizona law.   Unlike

10  Internet service providers, Home Depot does not provide any "service that

11  allows its users to send or receive oral, wire or electronic communications or

12  computer services." A.R.S. § 13-3001(3).  Nor does Home Depot provide "caller

13  identification, automatic number identification, voice mail, electronic mail,

14  [or] paging" services to subscribers.  *Id.* § 44-1376(1).  Merely sending emails

15  to someone is different from providing an email service, and sending emails

16  does not transform an ordinary retailer into a communication service provider

17  under Arizona law.

18       Although no court has opined on the definition of "communication

19  service provider" under Arizona law, courts interpreting the statutory term

20  "electronic communication service" under analogous federal law have held

21  that a "company that merely utilizes electronic communications in the conduct

22  of its own business is generally considered a purchaser or user of the

23  communications platform, not the provider of the service to the public."

24  *Garner v. Amazon.com*, 603 F. Supp. 3d 985, 1003-04 (W.D. Wash. 2022)

25

26

27

28

(collecting cases).[3]  Retailers like Home Depot that email their customers are differently situated from network service providers that allow broadcast or two-way communication.  *Cf. ACA Connects v. Bonta*, 24 F.4th 1233, 1236 (9th Cir. 2022) (broadband Internet companies described as "communications service providers"); *Suzlon Energy Ltd. v. Microsoft Corp.*, 671 F.3d 726, 728 (9th Cir. 2011) (Microsoft, as operator of Hotmail, was an "electronic communication service provider" under federal law).

Nor does Plaintiff allege that Home Depot procured records from her communication service providers—such as her broadband Internet bills or cable television subscription information.  Rather, the FAC alleges only that Home Depot's use of pixel tags generates engagement data about "when an email is read" by a recipient and "the IP address and other unique identity details of the computer or smartphone used to read the email."  FAC ¶ 26. That does not implicate TUCSRA.  The email engagement data at issue is not information associated with Plaintiff due to her subscription to a communications service provider.  And the ultimate source of that data is not Plaintiff's communication service provider.  It therefore falls well outside TUCSRA's definition of "communication service records."

### c.    Ambiguity Must Be Resolved in Home Depot's Favor

Even if the meaning of "communication service records" were ambiguous, any uncertainty must be resolved in Home Depot's favor. Violation of TUCSRA is a class 1 misdemeanor offense.  A.R.S. § 44-1376.05. Whenever "penal statutes [are] susceptible to different interpretations," "the

---

[3] "Where the wording of a statute is ambiguous and uncertain . . . cases from other jurisdictions construing a like statute or interpreting its words are persuasive and helpful."  *Branch v. State*, 136 P. 628, 631 (Ariz. 1913).

1  rule of lenity requires that doubts be resolved in favor of the defendant."
2  *Barnett*, 101 P.3d at 649 (citation omitted).  After all, criminal offenses must
3  "be defined in terms clear enough to give persons of ordinary intelligence
4  notice of what conduct is prohibited."  *State v. McDermott*, 208 Ariz. 332, 336
5  (Ariz. Ct. App. 2004) (quotation omitted).  Lenity safeguards due process by
6  ensuring that defendants have "fair warning of the nature of the conduct
7  proscribed."  *Vo*, 836 P.2d at 413.  Nothing in TUCSRA's terms, however, is
8  clear enough to put a person of ordinary intelligence on notice that using a
9  read-receipt technology like pixel tags would be unlawful in Arizona.  And
10 Plaintiff has not pleaded any facts suggesting that when TUCSRA was
11 adopted, Arizonans understood that it policed email marketing.

12        Although Plaintiff brings this case as a civil action, she has accused
13 Home Depot of committing a crime.  When (as here) a penal statute has "both
14 criminal and noncriminal applications," "the rule of lenity applies" to both.
15 *Leocal v. Ashcroft*, 543 U.S. 1, 12 n.8 (2004).  Courts must "interpret the
16 statute consistently, whether [they] encounter its application in a criminal or
17 noncriminal context."  *Id.*; *see also hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th
18 1180, 1200 (9th Cir. 2022) (applying lenity in civil action involving penal
19 statute).  After all, the "rule of lenity . . . is a rule of statutory construction
20 whose purpose is to help give authoritative meaning to statutory language.  It
21 is not a rule of administration calling for courts to refrain in criminal cases
22 from applying statutory language that would have been held to apply if
23 challenged in civil litigation."  *United States v. Thompson/Ctr. Arms Co.*, 504
24 U.S. 505, 518 n.10 (1992) (Scalia, J., concurring in the judgment).

25
26
27
28

1

2

### 2. Legislative History Shows Arizona Was Concerned With "Pretexting," Not Email Marketing

3

4

5

Statutory text and context are sufficient to resolve this case.  But to the extent it may be considered, legislative history confirms TUCSRA's textual and contextual clues.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

The Arizona legislature enacted the Telephone Records Act of 2006 to stop "data broker[s]" from "obtain[ing] and sell[ing] personal wireless and wire line telephone records" by "posing as the customer, then offering the records for sale on the Internet without the customer's consent or knowledge"—a practice known as "pretexting."  Ariz. Sen. Fact Sheet for H.B. 2785, 2006 Reg. Sess. H.B. 2785 (Apr. 25, 2006).   The senate observed that the Federal Communications Commission had investigated "numerous companies for allegedly illegally procuring phone records."  *Id.*  The bill "c[a]me about due to the proliferation of internet sites which sell these types of records."  *Minutes, Hearing on H.B. 2785 before the Ariz. Com. Comm.*, 47th Leg., 2d Sess. (Feb. 15, 2006) (statement of Rep. Jonathan Paton, sponsor).   The legislature therefore sought "to prevent unauthorized disclosure of confidential consumer information that is held by telecommunications companies."  Ariz. House Bill Summary, 2006 Reg. Sess. H.B. 2785 (Feb. 16, 2006) (concernedly noting "that some data brokers have falsely gained access to consumer information by posing as the customer, then offer[ed] those records for sale on the Internet").

22

23

24

25

26

27

28

Then, in early 2007, the legislature amended the law to include public utilities and communication service providers, in addition to telephone companies.  Congress had just enacted the Telephone Records and Privacy Protection Act in January 2007 to cover both traditional telecommunications carriers and IP-enabled voice services.  *See* 18 U.S.C. § 1039.  And the FCC had just strengthened its rules to "protect the privacy of customer proprietary network information (CPNI) that is collected and held by providers of

1  communications services." *In re: Implementation of the Telecommunications*
2  *Act of 1996: Telecommunications Carriers Use of Customer Proprietary*
3  *Network Info. & Other Customer Info. IP-Enabled Servs.*, 22 F.C.C. Rcd. 6927,
4  6928 (Apr. 2, 2007) (footnotes omitted).  So the Arizona legislature enacted
5  TUCSRA to address "pretexting" in other contexts.  *See* Ariz. Sen. Fact Sheet
6  for H.B. 2726, 2007 Reg. Sess. H.B. 2726 (Apr. 20, 2007) (analogizing to federal
7  law's protections for CPNI at 47 U.S.C. § 222 and 18 U.S.C. § 1039).  Once
8  again, the legislature was concerned with "the practice of getting personal
9  information under false pretenses," which malicious actors could use to
10  "secure credit in a false name, steal assets or investigate or sue the owner of
11  the personal information." *Id.*

12      Plaintiff's allegations are thus far afield from the pretexting problem
13  that Arizona addressed through TUCSRA.  Insofar as the statutory text is
14  ambiguous, TUCSRA's legislative history shows that Plaintiff has failed to
15  plausibly allege that Home Depot unlawfully procured her communications
16  service records.  *See Allen*, 513 P.3d at 313.  And any doubt must be resolved
17  in Home Depot's favor.  *See Barnett*, 101 P.3d at 649.

18              **3.    Plaintiff's Interpretation Produces Absurd Results**

19      For nearly two decades since TUCSRA's enactment, it seems that no
20  person—whether legislator, retailer, consumer, or criminal defendant—ever
21  suggested that TUCSRA might apply when an email sender generates email
22  engagement data.  And with good reason:  Plaintiff's statutory interpretation
23  would vastly expand TUCSRA's reach and produce absurd results.   To
24  illustrate, A.R.S. § 44-1376(1) says that "communication service records"
25  include a subscriber's "name."  But TUCSRA cannot plausibly prohibit every
26  list of customer names collected in *any* context.  It can only plausibly apply to
27  the names of "subscribers" to a "communication service provider," as that term
28  is understood in Arizona law.

But applying Plaintiff's logic, TUCSRA would prohibit merchants from retaining nearly any information about their customers without authorization. For example, newspapers provide print communications to their subscribers. A newspaper would apparently violate TUCSRA if it kept a record of how long each subscriber had been on its distribution list ("length of service") without expressly obtaining the subscriber's consent to collect that information. Or imagine a magazine publisher that retains its subscribers' payment information to manage recurring charges. Under Plaintiff's interpretation, the magazine might be liable for retaining that data in violation of TUCSRA. Finally, suppose a non-profit organization hosted a webinar. If the non-profit connected subscribers' email addresses with their attendance and engagement (such as questions asked or polls answered), it would apparently need authorization for each piece of tracked information or else face criminal and civil liability.

Such an interpretation would stretch TUCSRA far beyond anything the Arizona legislature could have expected, much less intended. Courts must presume that "the framers of the statute did not intend an absurd result and our construction must avoid such a consequence." *State v. Medrano-Barraza*, 949 P.2d 561, 563 (Ariz. Ct. App. 1997). TUCSRA's text, context, and history confirm that the legislature did not criminalize such a broad swath of everyday conduct or intend such startling applications.

## B.   Plaintiff Has Not Pleaded Facts Showing That Home Depot Knowingly Acted Without Authorization

Plaintiff has not (and cannot) plead facts showing that Home Depot "knowingly" collected her information "without . . . authorization." *See* A.R.S. § 44-1376.01(A)(1).

The FAC repeatedly offers the bald assertion that Home Depot "never received the Plaintiff's . . . consent to collect, obtain and use" data generated

1  by email pixel tags.  FAC ¶ 7; *see also id.* ¶¶ 8, 13, 46-47, 71.  But Plaintiff
2  never pleads factual content to support that allegation.  Indeed, Plaintiff has
3  scrupulously avoided referencing the terms that govern her relationship as a
4  "subscribe[r]" to Home Depot's email list.  *Id.* ¶ 1.[4]  Even though that
5  subscriber relationship forms the basis of her TUCSRA claim, Plaintiff has
6  deliberately omitted facts that tend to show that Plaintiff authorized Home
7  Depot to use pixel tags.

8        The FAC also lacks factual allegations showing that Home Depot
9  procured Plaintiff's records while *knowing* that it lacked her authorization to
10  do so.  *See id.*  TUCSRA provides that an offense must be committed
11  "knowingly" but does not distinguish requisite mental states between its
12  elements.  Because TUCRSRA is a penal statute with this characteristic,
13  Arizona law provides that "the prescribed mental state shall apply to each
14  such element unless a contrary legislative purpose plainly appears."  A.R.S.
15  § 13-202(A).  No contrary legislative purpose here appears.  The "knowingly"
16  mens rea thus applies to each element of Section 44-1376.01(A)(1).  And under
17  Arizona law, "knowingly" means "with respect to conduct or to a circumstance
18  described by a statute defining an offense, that a person is aware or believes
19  that his or her conduct is of that nature or that the circumstance exists."  *Id.*
20  § 13-105(10)(b).  Plaintiff does not plead circumstances from which this Court
21  might reasonably infer that Home Depot possessed any particularized
22  awareness or belief that Plaintiff had not authorized it to use pixel tags in its
23  emails to her.

24        The FAC's conclusory allegations thus do not satisfy federal pleading
25  standards.  *See Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112,
26
27        ───────────────
28  [4] This may explain why Plaintiff has avoided alleging that she is a
"customer."  *See infra* Section II.C.

1   1114-15 (9th Cir. 2014) (affirming dismissal for failure to satisfy Federal Rule

2   of Civil Procedure 8(a) when plaintiff did not plausibly allege "the statutory

3   scienter").

4       C.      **Plaintiff Has Not Pleaded Facts Showing That She is Home**

5               **Depot's "Customer"**

6       TUCSRA's civil cause of action extends only to "a *customer* whose

7   communication service records . . . were procured, sold or received in violation

8   of this article."  A.R.S. § 44-1376.04(A) (emphasis added).  And a TUCSRA

9   offense expressly requires that the communication service records were

10  procured "without the authorization of the *customer* to whom the record

11  pertains."  *Id.* § 44-1376.01(A)(1) (emphasis added).

12      Notwithstanding these clear textual limitations, the FAC lacks well-

13  pled facts that Plaintiff is Home Depot's "customer."  Although Plaintiff

14  alleges that she "subscribed" to Home Depot's email list (FAC ¶ 1), Plaintiff

15  never alleges that she bought products from Home Depot or pleads any factual

16  content concerning the date, place, or means of such purchase.  The FAC's

17  putative class even purports to include "All persons in the State of Arizona

18  who have opened a marketing email containing a tracking pixel from

19  Defendants," regardless of whether the recipient is Home Depot's customer.

20  *Id.* ¶ 52.  Because the FAC lacks facts supporting Plaintiff's eligibility to sue

21  under A.R.S. § 44-1376.04(A), the FAC must be dismissed.

22                              **CONCLUSION**

23      For all these reasons, the FAC should be dismissed with prejudice.

24

25

26

27

28

Dated: July 29, 2024

WILSON SONSINI GOODRICH & ROSATI, Professional Corporation

*/s/ Matthew A. Macdonald*
Matthew A. Macdonald (*pro hac vice*)
953 East Third Street, Suite 100
Los Angeles, California 90013
Telephone: (323) 210-2900
Fax: (866) 974-7329
matthew.macdonald@wsgr.com

Joshua J. Craddock (*pro hac vice*)
1881 Ninth Street
Boulder, CO 80302
Telephone: (303) 256-5900
Fax: (866) 974-7329
jcraddock@wsgr.com

*Counsel for Defendant*
*Home Depot U.S.A., Inc.*

1

## CERTIFICATE OF SERVICE

2      I hereby certify that on this 29th day of July 2024, I electronically

3  filed the foregoing using the CM/ECF system, which served notice to the

4  following CM/ECF participants:

5

6      Thomas M. Ryan (*pro hac vice*)
       LAW OFFICE OF THOMAS M. RYAN, P.C.

7      35 East Wacker Drive, Suite 650
       Chicago, IL 60601

8      (312) 726-3400
       tom@tomryanlaw.com

9

10     James X. Bormes (*pro hac vice*)
       Catherine P. Sons (*pro hac vice*)

11     LAW OFFICE OF JAMES X. BORMES, P.C.

12     8 South Michigan Avenue, Suite 2600
       Chicago, IL 60603

13     (312) 201-0575
       jxbormes@bormeslaw.com

14     epsons@bormeslaw.com

15

16     Michelle R. Matheson (AZ Bar #019568)
       MATHESON & MATHESON, P.L.C.

17     15300 North 90th Street, Suite 550

18     Scottsdale, AZ 85260
       mmatheson@mathesonlegal.com

19

20                              /s/ *Matthew A. Macdonald*
                                Matthew A. Macdonald

21

22

23

24

25

26

27

28